UNITED STATES DISTRICT COURT
SOUTHERN DISTRCT OF FLORIDA

CASE NO. 17-20712-CR-MORENO(s)

UNITED STATES OF AMERICA

v.

JAMES M. SCHNEIDER,

    **Defendant.**

_____/

**NOTICE OF INTENT TO SEEK UPWARD VARIANCE BASED ON DEFENDANT'S FALSE STATEMENTS AND CONCEALMENT OF ASSETS AND ACCOUNTS DURING PRESENTENCE INVESTIGATION REPORT**

The United States of America respectfully provides notice to the Court and the defense that it intends to seek an upward variance from the applicable guideline range based on Defendant's false statements to the Probation Office during the preparation of the Presentence Investigation Report (PSI) (Dkt. No. 154, filed February 7, 2019), concerning (a) his accounts and, (b) his ownership and control over funds and assets.[1]  In the alternative, the Government is presenting this recently-obtained information to the Court now as an alternative basis to apply a 2-level obstruction enhancement under U.S.S.G. § 3C1.1, as the PSI already recommends such an enhancement for the Defendant having made false statements during his trial testimony.

Given that the Defendant already provided false testimony at trial, and already faced a two-

---

[1] Pursuant to Local Administrative Order 95-02, the Government also hereby provides notice that it anticipate that the sentencing may take more than one hour, depending on whether the Court requires additional witnesses as to the disputed facts, restitution, and forfeiture issues.  If the Court is of the view that it has sufficient facts and evidence before it, based on the trial evidence and subsequent briefing--the filed Objections to the PSI by the Defendant, the filed Response to the Objections by the Government, and the Government's filings as to restitution and forfeiture--then the Government anticipates that approximately 45 minutes for each of the Government and Defense to make arguments would be sufficient.  If the Court requires additional testimony, this estimate would increase.

level increase for such false testimony, if no additional penalty were to be imposed for making material false and misleading statements to the Probation Officer during the presentence investigation, there would be *no incentive* for a testifying Defendant, who had provided false testimony, to ever provide truthful or complete information to the Pretrial Services office (and thus the Court) during the presentence investigation.[2]  For these reasons, the Government is filing the appropriate notice under Local Administrative Order 95-02 ("AO 95-02") so that the Court and the Defendant are aware of this evidence, and are on notice that the Government will argue for an enhanced sentence based on the evidence.[3]

> **A. Statements to Pretrial Services on December 17, 2018, re Assets and Accounts: Only one (joint) checking account, a Toyota, and no other assets or accounts**

During his pretrial interview in December 2018, Defendant was asked to provide information as to his income, assets and accounts. As reflected in the preliminary PSI, and as confirmed during discussions with the Probation Officer who conducted the interview and has authored the PSI, Defendant disclosed only one account: a joint-checking account in his name and his wife's name (Susan Schneider), Citi account x8324 (the "Citi joint checking account"). Defendant also stated that he had only $3,000 in cash, *and no other accounts or assets*. Defendant further stated that he had a 2018 Toyota automobile.

---

[2] The Government also sets forth below that it is seeking an upward variance in relation to role in the offense, pursuant to Application Note 1 of U.S.S.G. § 3B1.1, since Defendant exercised control over the assets and proceeds of the offense but otherwise did not receive a role enhancement.  Should the Court not consider this evidence as sufficient grounds for an upward variance to the guideline range as otherwise calculated, then the Court should consider this evidence as part of its determination as to where, within the applicable guideline range, the Defendant should be sentenced.  *See* U.S.S.G. § 3C1.1, Application Note 5.

[3] Pursuant to S.D. Fla. Local R. 88.10(o)(3), the Government produced to the defense the relevant real estate closing file and bank records that were recently received and that are related to these issues.  These records were sought by the Government only after review of the initial PSI, in which Defendant indicated assets and accounts that did not appear to be consistent with other evidence collected by the Government during the investigation.  As set forth more fully below, these records establish that Defendant owned accounts and had funds and assets well in excess of what he reported to the Probation Officer.

Paragraphs 170 to 180 of the PSI summarize financial and employment information provided by Defendant to the Probation Officer in connection with his interview on December 17, 2018. Defendant reported no employment since April 2016, when he ceased working at his law firm and was removed as a partner. PSI ¶ 170. Defendant reported annual earnings for 2012 to 2016 that varied from $200,000 to $260,000 per year. *Id.* Defendant reported no other employment, income, asset or account, including life insurance. The PSI reflects that Defendant is a co-owner of the Hillsboro Mile residence ("the Beach House"), but that Defendant purportedly conveyed his interest via a quit claim deed to his wife a number of years ago.[4] Defendant is not listed on the title.[5]

### B. After learning of SEC/DOJ investigations in 2016, Defendant Sold Primary Residence in February 2017, that was owned in his and wife's names, and wired entire $774,078.85 seller's proceeds to account in wife's name only

By letter dated March 21, 2016 (termed a "Wells notice"), Defendant was formally notified that the SEC's investigation of him would likely lead to civil fraud charges. Defendant was also notified in July 2016 that he was a target of the instant federal criminal investigation related to the same conduct. In February 2017, Defendant sold his then-primary residence in Boca Raton (the "Boca Raton house"), netting $774,078.85 after expenses. (*See* Closing Disclosure, Ex. C.) The Boca Raton house was owned jointly by Defendant and his wife. (*See* Deed, Ex. C.) Defendant and his wife each personally signed instructions to the closing attorney dated February 1, 2017,

---

[4] It appears that Schneider did not list or claim ownership in the Beach House during his interview with the Probation Officer, but that the Probation Officer instead independently determined that he had a one-half ownership interest in it. It should be noted that the Beach House is an ocean front unit in a development, and that a nearby unit with smaller square-footage sold in June 2018 for $1,158,250. (*See* Ex. D).

[5] The Beach House was utilized by Schneider to entertain and meet with clients during the fraud scheme, including with Laz Rothstein, a South Florida attorney and businessman. *See* Ex E attached hereto (Government Trial Exhibit 34L ("GX34L")). GX 34L contains Rothstein's Microsoft outlook calendar entries for Schneider and Steven Sanders. For Schneider, it includes directions to the Beach House, as well as the door-code for entry. For Sanders, it states, "Introduced by Jim Schneider. Sells public shells."

3

instructing that the $774,078.85 be wired to a brokerage account at Morgan Stanley, ending in x4-072, solely in the name of Defendant's wife. During Defendant's PSI interview he did not disclose the existence of, or any interest or ownership of funds, related to the Morgan Stanley x-4072 account.

### C. Review of the Citi Joint Checking Account Shows Numerous Other Accounts and Assets that Were Not Disclosed to the Probation Officer

The Government recently obtained bank statements and deposit items related to the Citi joint checking account (ending x8324) that was disclosed to the Probation Officer.[6] *See* Ex. A (certain monthly account statements) and Ex. B (certain deposit items). Review of the account records revealed: (1) other accounts in the Defendant's name; (2) a $50,000 cashier's check purchased from a Wells Fargo branch near Defendant's residence one-week before trial, and the same day deposited by Defendant into the Citi joint checking account, apparently to evade attribution of the source asset or account; (3) large amounts of cash deposited into the Citi joint checking account from a previously undisclosed account in Defendant's wife name (only); (4) a substantial tax refund of $65,675.18 paid to Defendant on August 17, 2018 (with no disclosure of any employment, income or assets to the Probation Officer commensurate with an income that would generate such a tax refund); and (5) life insurance policies, annuities and dividend payments for policies or assets not disclosed.

### (1) Other Accounts Used to Fund the Citi Joint Checking Account

The Citi monthly account statements show that other accounts in Defendant's name were used to fund the Citi account, but these accounts were not disclosed to the Probation Officer.

---

[6] These documents were received by the Government on February 6, 2019.

4

Throughout 2018, a series of deposit items, specifically hand-deposited checks, were made into the account, such as a $55,000 deposit on March 20, 2018, and a $70,000 deposit on April 23, 2018. These deposits continued through the end of 2018, totaling more than $500,000 (Ex. A). Separately, beginning in June 2018, a series of ACH electronic funds transfers were made into the Citi joint checking account from one or two TD Ameritrade accounts, at least one of which was in Defendant's name:

1) 5/05/2018  ACH Transfer from a TD Ameritrade account        $25,000
2) 8/09/2018  Wire transfer James Schneider IRA TD Ameritrade $100,000

(*See* Ex. A.)  It is unclear whether these incoming transfers from TD Ameritrade were from one or two separate accounts, but it is clear that at least on TD Ameritrade account existed in Defendant's name (and that transferred $100,000 to the Citi account). Defendant did not disclose any TD Ameritrade accounts to the Probation Officer.

### (2) $50,000 Cashier's Check Purchased by Defendant at Wells Fargo one-week before trial, and deposited the same day by Defendant into his Citi joint checking account

The deposit items into the Citi joint checking account show that Defendant controlled additional assets and accounts that were not disclosed to the Probation Officer. As can be seen from Exhibit B, Defendant purchased a $50,000 cashier's check on November 19, 2018, from a Wells Fargo Bank branch in Lighthouse Point, Florida, near the Beach House. This occurred one week before trial commenced in this case. The $50,000 cashier's check was then hand-deposited by Defendant at Citi, into the Citi joint checking account the same day, as evidenced by the bank statement for that month and Defendant's own signature on the back of the cashier's check that was in his name. Defendant did not disclose to the Probation Officer any assets or accounts at Wells Fargo Bank, or any assets or accounts from which he could draw $50,000 in cash one week before

5

trial.

### (3) Large Amounts of Cash Deposits from Account in Wife's Name Only, Used to Pay Defendant's Legal Fees and Joint Living Expenses

From a review of the Citi joint checking account statements and deposit items (Exs. A & B), numerous large deposits can be seen. These were made by check from an account in the name of Susan Schneider, at Chase, ending in x-1061. This included three checks totaling $150,000 in November 2018 alone, and totaling more than $500,000 during 2018. Defendant did not disclose any income, asset, or account, to which he had sole or joint ownership interest, or which would allow for payments of this magnitude. While it is possible that this was, in reality, his wife's money, certain evidence collected during the investigation has revealed that she has been retired and that she did not appear to have her own income apart from Defendant's income.

### (4) Income Tax Refund of $65,675.00 on August 17, 2018 Without Disclosure of Employment or Income That Would Generate Such a Refund

The deposit items for the Citi joint checking account show an income tax refund check made payable to James Schneider and Susan Schneider of $65,675.00 dated August 17, 2018. (*See* Ex. B.) Defendant represented to the Probation Officer that he had no employment since approximately August 2016, when he left his prior law firm. PSI ¶ 170. Defendant also represented that he had not filed a personal income tax return since 2017. PSI ¶ 180. In his pretrial interview only a limited received by the Government in the last few days and were sought based on Defendant's statements to the Probation Office, set forth in paragraph 172 of the PSI, that he had only $3,000 dollars, only one bank account, and no assets other than a 2017 Toyota.

### (5) Life insurance policies, annuities and dividend payments for policies or assets not disclosed

A review of the Citi joint checking account shows that Defendant wrote a series of checks to what appear to be life insurance policies and/or annuities, as follows:

6

| | | |
|---|---|---|
| Check 729 Keystone Insurance | $280 | 6/25/2017 |
| Check 757 Genworth Life (No. 0110451949) | $833.48 | 8/20/2017 |
| Check 831 Tower Hill Prime Ins. (No. 0000342182) | $305.08 | 2/22/2018 |
| Check 850 Aetna Life Insurance Co. (No. 0110451949) | $883.48 | 4/20/2018 |
| Check 899 Genworth Life & Annuity (No. 0110451949) | $883.48 | 8/21/2018 |

(*See* Ex. F). These life insurance policies and/or annuities were not disclosed to the Probation Officer. Further, checks received by Defendant and deposited into the Citi joint checking account appear to pertain to additional dividends or investments not disclosed to the Probation Officer:

| Payor | Payee | Amount | Date |
|---|---|---|---|
| Prudential Premier L Ser | James M. Schneider | $3,917 | 6/18/2018 |
| FCB (apparent dividend) | James M. Schneider | $25.19 | 3/19/2018 |

(*See* Ex. B). Defendant did not disclose to the Probation Officer any life insurance policy or asset that would generate a dividend or payment that is consistent with these checks.

Additional records recently obtained by the U.S. Attorney's Office show that in 2018, Defendant's spouse, Susan Schneider, purchased in her own name a 2018 BMW convertible for approximately $60,000, and stated in her finance application that she was retired (unemployed), and had a $50,000 per year income based on Social Security payments and investments. The Citi joint checking account does not have any social security deposits related to Susan Schneider, and Defendant did not disclose any investments or assets to the Probation Officer that would generate any income at all to him (or to his spouse, jointly). Finally, unlike Defendant's disclosure to the Probation Officer of having only $3,000 in cash at the time of the interview in December 2018, the Citi account alone had $31,323.90 in cash as of December 6, 2018. Defendant appears to have had other cash available to him too, apparently including funds located at accounts in his own name at Wells Fargo, and TD Ameritrade, various annuities. Defendant also appears to have had funds

placed into accounts in his wife's name only, including at Morgan Stanley and Chase bank.

### D. Defendant's false statements are part of a pattern and have had real consequences on the ability of the Court to assess his financial condition

The documents referenced above establish that Defendant has recently had access to significant sources of funds and accounts that he did not disclose to the Probation Officer. The Probation Officer has referenced as much in the revised PSI. *See* PSI ¶ 174. Of the many examples of non-disclosure, the cashier's check of $50,000, that was purchased by Defendant on November 19, 2018 at a Wells Fargo branch near his residence, one week before trial began, and that was then deposited into the Citi joint checking account -- stands out as a significant effort to hide and conceal the source and location of his assets in the event anyone obtained the Citi bank records. (*See* Ex. B). Defendant personally signed the back of the Wells Fargo cashier's check and personally deposited it the same day at Citi. The cashier's check shows that Defendant signed the back and the Citi records also show the deposit occurred that same day it was purchased. Since this all occurred one week before trial, given that Defendant's interview occurred approximately one month later, the failure of Defendant to disclose this Wells Fargo account or his access to assets or funds used to purchase the $50,000 check, appears to be deliberate. When combined with the pattern of non-disclosure established via the documents referenced in this notice, the Government respectfully suggests that this evidence justifies an upward variance.

At the conclusion of the trial, the Court explained to the Defendant that there would be an investigation by the Pretrial Services office, including an interview by the Probation Officer. The Court further admonished the Defendant about the importance of the pretrial investigation and even about the importance of the Defendant taking steps before trial to try to pay any restitution he could pay (acknowledging the Defendant's financial ability), before sentencing as the Court would look

8

favorably upon the Defendant if he were to take such steps. Rather than adhere to the Court's admonitions, the Defendant instead was untruthful with the Probation Officer, and only disclosed $3,000. The Defendant made false statements under oath during his trial testimony, and thus was already facing an obstruction enhancement at the time of his interview with the Probation Officer. Absent some sort of upward sentencing variance for further false and obstructive conduct, the Defendant thus had no real incentive to provide truthful information to the Probation Officer.

The real consequence of lying to the Probation Officer about his assets and income is that the Court is prevented from knowing his true financial status and his ability to pay a fine. Further, the PSI is used as a roadmap by Court personnel and the Government for any future collection efforts for any forfeiture or restitution order. Since it is anticipated that there will be such an order in this case, these false statements serve to thwart the ability of the Court and the Government in any future collection efforts. Finally, the false statements and concealment have had real consequences, in that the Government personnel and the Probation Office have had to scramble to further investigate this Defendant and further use limited resources to show that Defendant is continuing to lie to try to avoid or limit the consequences of his criminal conduct.[7] To this day, Defendant's actual ownership over certain accounts referenced herein and the existence of other accounts or assets is unknown. It is clear that the disclosures made by Defendant to the Probation Officer do not provide an accurate picture and cannot be relied upon.

---

[7] An additional ground for an upward variance should be considered by the Court. Defendant did not receive a sentencing enhancement for role in the offense, but based on his exercise of control over the fraudulent assets derived from the scheme, the Court may properly consider an upward variance. During the scheme, Defendant exercised control over $5.807 million in fraud proceeds for nearly five years, across 17 separate fraudulent sales. *See* GX51C. Defendant was the only person who could transmit funds from the "trust" account, and he did so without ever obtaining confirmation from the purported "client" or owner of the shares/property that was supposedly sold and that was part of the supposed "escrow" arrangement. In other words, as the Application Note states, Defendant exercised "management responsibility over the property" -- the proceeds -- of the fraud. Defendant should thus receive an upward variance for his role in the scheme.

Finally, the document that shows that Defendant purchased a cashier's check in this amount from a Wells Fargo branch near his residence, in Lighthouse Point, Florida. The cashier's check was then hand-deposited by Defendant into the Citi joint checking account that same day, November 19, 2019, and Defendant signed the back of the cashier's check. Defendant did not disclose any accounts or assets to the Probation Office related to Wells Fargo, nor did Defendant disclose any asset or account that would allow him to access funds of this magnitude.

## Conclusion

.   For the reasons set forth above the Government respectfully provides notice of its intention to seek an upward variance at sentencing.

Dated: February 8, 2019

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY
        SOUTHERN DISTRICT OF FLORIDA

By:  /s/ Jerrob Duffy
      Assistant United States Attorney
      Court No. A5501106
      99 Northeast 4th Street
      Miami, Florida 33132-2111
      Tel: (305) 961- 9273
      Fax: (305) 530- 6168
      Jerrob.Duffy@usdoj.gov

      /s/ Christopher B. Browne
      Assistant United States Attorney
      Florida Bar No. 91337
      99 Northeast 4th Street
      Miami, Florida 33132-2111
      Tel: (305) 961- 9419
      Fax: (305) 530- 6168
      Christopher.Browne@usdoj.gov

/s/ Jeffrey Cook
Special Assistant United States Attorney
Florida Bar No. 647578
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961- 9004
Fax: (305) 530- 6168
Jeffrey.Cook2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by filing via the same via the Court's CM/ECF filing system, on all counsel or parties of record on the Service List below.

*s/ Jerrob Duffy*
Assistant United States Attorney

**SERVICE LIST**

Ira Lee Sorkin, Esq.
Maria E. Garcia, Esq.
Mintz & Gold LLP
600 Third Avenue
New York, NY 10016
Phone: (212) 696-4848
Fax: (212) 696-1231
E-mail: sorkin@mintzandgold.com

Armando Rosquete, Esq.
Bell Rosquete Reyes
Phone: (305) 570-1551
Fax: (305) 570-1599
999 Ponce de Leon Boulevard, Suite 1120 PH
Coral Gables, FL 33134
E-mail: arosquete@brresq.com

*Attorneys for Defendant James Schneider*